ARTHUR VENNERI COMPANY, A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. HOUSING AUTHORITY OF CITY OF PATERSON, AND B. J. LUCARELLI & CO., INC., A NEW JERSEY CORPORATION, DEFENDANTS-RESPONDENTS.

Argued February 17, 1959—Decided March 10, 1959.

*Mr. Leonard I. Garth* argued the cause for the plaintiff-appellant (*Messrs. Cole, Berman & Garth,* attorneys; *Mr. Bernard L. Belsky,* on the brief).

*Mr. Charles Danzig* argued the cause for the defendant-respondent B. J. Lucarelli & Co., Inc. (*Messrs. Riker, Danzig & Marsh,* attorneys).

*Mr. Martin Verp* argued the cause for the defendant-respondent Housing Authority of City of Paterson.

*Messrs. Herman Scott* and *Charles H. Hoens, Jr.,* Assistant United States Attorneys, attorneys for Public Housing Administration, *amicus curiae.*

The opinion of the court was delivered by

BURLING, J.   This is a proceeding in lieu of prerogative writ commenced by plaintiff Arthur Venneri Company, a New Jersey corporation, against defendant Housing Authority of the City of Paterson (hereinafter referred to as the housing authority), and defendant B. J. Lucarelli & Co., Inc., a New Jersey corporation.   The dispute involves the award of a contract for the construction of a public housing project by defendant housing authority to defendant Lucarelli.   Plaintiff admittedly was the lowest bidder for the contract, its bid being $36,000 less than the bid of the

next lowest bidder, the defendant Lucarelli. The total amount of the contract ultimately awarded to defendant Lucarelli was $4,683,000—plaintiff's bid was $4,647,000. The housing authority refused to award the contract to plaintiff for the reason that, under the pertinent federal government regulations, plaintiff was ineligible to receive an award for the contract and that under the regulations of the Public Housing Administration (hereinafter referred to as the PHA) and the housing authority's contract with the PHA, the housing authority was obligated not to award the contract to an ineligible contractor.

Plaintiff filed its complaint with supporting affidavits in the Superior Court, Law Division, on November 3, 1958, seeking a judgment to set aside the award of the contract to the defendant Lucarelli as illegal and void and declaring that the contract should be awarded to plaintiff as lowest responsible bidder. Plaintiff further sought a preliminary restraint. Plaintiff moved for summary judgment, and in the course of the proceedings it was argued that the matter be considered by the trial court as though a motion had been made by the defendants for a judgment dismissing the complaint. See *R. R.* 4:12–2. The trial court permitted the United States Attorney, on behalf of the PHA, to appear and argue the cause as *amicus curiae*. Thereafter the trial court entered judgment in favor of the defendants. Plaintiff prosecuted an appeal to the Superior Court, Appellate Division, and while the cause was pending there this court granted the defendants' petition for direct certification. *R. R.* 1:10–1A. [29 *N. J.* 62.]

The essential facts are as follows: On May 2, 1958 the plaintiff was barred from contracting with the Department of Defense for a period ending March 12, 1959. The debarment order was entered pursuant to a determination of the Army's Gratuities Clause Board, after hearing, which found that plaintiff was guilty of violating an anti-gratuities clause in contracts it held with the United States Army Engineers Division, in that its president, Arthur Venneri, "did give a gratuity of $1000 to Colonel George N. Kibler, an officer

of the United States Army, with a view toward securing favorable treatment with respect to the making of determination in the settlement of claims and disputes as to the performance of certain contracts." The matter had been previously and immediately reported by Colonel Kibler to his superiors. The $1,000 was subsequently ordered to be turned over to the Finance Officer, United States Army.

Thereafter, plaintiff's name appeared on a PHA circular, bearing the date August 1, 1958, the purpose of which was to inform local housing authorities of the persons and firms ineligible to receive awards for PHA projects. The circular indicated the nature of plaintiff's restriction to be "Type F" which, as explained by an earlier PHA circular dated April 12, 1957, meant: "Firms and individuals debarred by action of other Federal executive agencies."

The source of authority for plaintiff's name appearing on the PHA list is as follows: The General Service Administration (hereinafter referred to as GSA), pursuant to statutory authority, see 40 *U. S. C. A.,* §§ 471, 481, adopted and issued Regulation 15 dated June 17, 1954, addressed to "Heads of Federal Agencies Subject: Debarment of Bidders." The regulation directed, *inter alia,* federal agencies to establish and maintain a consolidated list of firms and individuals to whom contracts will not be awarded.

Section 5 then provides in part:

"Each executive agency is authorized to debar in the public interest a firm or individual for any of the causes and under all appropriate conditions listed below:
a. Causes
\*      \*      \*      \*      \*      · \*      \*      \*
(4) Debarment by some other executive agency."

PHA regulations promulgated pursuant to the authority granted by 42 *U. S. C. A.,* §§ 1404a, 1408, and standard contracts with local authorities deal exhaustively with the status and extent of disqualification of ineligible bidders. Regulation 213.1, section 4(a)(5), of the PHA "Low Rent Housing Manual," dated April 11, 1955, provides:

"a. Disqualification of Low Bidder. The low bid shall not be rejected unless it is clearly demonstrated that the bidder should be disqualified. The low bidder shall not be disqualified unless it is shown that:

\*  \*  \*  \*  \*  \*  \*  \*

(5) The bidder is ineligible to receive award under the provisions of any regulations issued by the Secretary of Labor of the United States, or his name appears on the PHA list of firms and individuals debarred for other causes. See Section 103.1."

■ Subsection 2(b) of section 103.1 referred to above provides:

"The PHA list of firms and individuals debarred for other causes in respect to awards of certain types of Federal contracts. *The fact that the name of any contractor appears on this list shall be deemed to be prima facie evidence that such contractor is not a responsible bidder for the type of contract for which debarred.* No award may be made to any such contractor except (1) where the list expressly excepts the purpose for which the proposed contract is to be let or (2) on prior approval by the PHA. Requests for such approval shall be fully documented. The Local Authority shall not approve any subcontractor or assignee of a contractor or subcontractor whose name appears on said list except under the same conditions as herein provided for the contractor." (Emphasis supplied.)

Thus, the inclusion of a contractor's name, as here, on a PHA list because. he was debarred for "other causes" is deemed *prima facie* evidence that the contractor is not a responsible bidder. "Other causes" means debarment other than by the Secretary of Labor and including "debarment by some other executive agency." GSA Regulation 15:5(a)(4). And, unless the nature of the contract for which a bid is made is expressly excepted or unless appropriate waiver of ineligibility is obtained, no award may be made to such contractor. The procedure for obtaining a waiver is outlined in section 103.1A of the Manual as follows:

"Award To Ineligible Contractor

1. Mandatory Cases. Awards to contractors whose names appear on the Secretary of Labor's list (i. e. the list described in Section 103.1, paragraph 2a) shall not be approved in any instance to which such listing is applicable.

2. Discretionary cases. Awards to contractors and requests by Local Authorities for clearance of subcontractors and assignees whose names appear on the other list (i. e. the list described in Section 103.1, paragraph 2b) where the list does not except the purpose for which the proposed contract is to be let, shall be approved only on prior request, fully documented, and only when the particular award has been affirmatively cleared by the Special Assistant to the Commissioner (Compliance). In urgent instances, the Region shall request such clearance by telephone or telegraph."

To further assure that no local authority will award a contract to a bidder whose name appears on a PHA ineligible list, section 303 (B) of the Consolidated Annual Contributions Contract (entered into between the PHA and the housing authority and covering the instant project) provides:

"Sec. 303. Domestic and Foreign Materials and Ineligible Contractors

 &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(B) In connection with the development or operation of any Project, the Local Authority shall not award any contract to any contractor, or approve or permit the assignment of any such contract to any contractor, or approve any subcontractor or assignee of any subcontractor, who is ineligible to receive awards of contracts from the United States as evidenced by the list or lists of such contractors furnished by the PHA.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;"

On August 26, 1958, plaintiff received an invitation to bid on the instant project, apparently prior to awareness of his debarment. Thereafter there followed a series of communications between plaintiff and the housing authority by which plaintiff sought to obtain clearance of its ineligible status. Plaintiff called the housing authority's executive director on several occasions and was informed that plaintiff was an ineligible bidder by virtue of the August 1, 1958 PHA Circular and that it would continue to be ineligible unless a waiver were obtained. On September 5, 1958 plaintiff write to the housing authority with a view towards obtaining a review of its case and the ultimate removal of its name from the ineligible bidder list. The housing authority met on September 9, and after a discussion and consideration of plaintiff's situation concluded that it was bound

by the PHA circular. At the meeting the housing authority's secretary informed the commissioners that plaintiff could not be considered an eligible bidder unless his name was removed from the PHA list "but that the Commissioners of the Local Authority do have the prerogative to review the case and submit their findings to the Public Housing Administration, requesting a waiver of a Contractor on the ineligible list." The commissioners took the position "it was * * * the Contractor's obligation to have his name cleared and taken off the list." Plaintiff was notified of the housing authority's determination by letter dated September 12, 1958, as follows:

"It was the decision of the Commissioners to comply with Circular dated 8-1-58 of the Public Housing Administration. However, if clearance is obtained by your Company, bids will be accepted by this Authority from you."

Thereafter, on September 25, 1958 plaintiff addressed an application for waiver to the housing authority's executive director and to the special assistant to the PHA commissioners. The application for waiver included a complete statement of plaintiff's version of the background of events leading to the offer of gratuity and plaintiff's answer and briefs including extended legal argument which had been filed with the Army Gratuities Clause Board.

On October 16, 1958 the housing authority conducted a public meeting. The affidavit of the executive director of the housing authority states that plaintiff was informed of the time and place of the meeting (the method of affording notice does not appear) and that the awarding of contracts for the project "would be considered, discussed and acted upon." Plaintiff did not appear at the meeting. Plaintiff's bid was discussed at the meeting; counsel for the housing authority noted that since no communication from the PHA had been received respecting plaintiff's status, he believed that it remained the same. Thereupon, by resolution 754, the defendant Lucarelli was awarded the contract as "lowest responsible bidder." On October 21, 1958 the Public Housing Commissioner refused to grant plaintiff's waiver.

Plaintiff, in its complaint and at the hearing below, stressed that the housing authority unlawfully refused it a hearing to consider and review plaintiff's claim that it was the "lowest responsible bidder" for the contract under *R. S.* 40:50–1. The trial court, in an opinion by Judge Colie, took the view that plaintiff was afforded a hearing on the original complaint before the Army Gratuities Clause Board and again when a waiver was applied for; that on the admitted facts plaintiff was not a responsible bidder and therefore a further hearing before the housing authority was unnecessary. 53 *N. J. Super.* 225.

Plaintiff on this appeal contends (1) that it was not afforded the required hearing before the housing authority; (2) that plaintiff is eligible for an award of the housing contract in question, and (3) that *N. J. S. A.* 55:14A–1 *et seq.* does not authorize the housing authority to agree to conditions which deprive plaintiff of its right to a hearing.

It is settled doctrine that following advertisement pursuant to *R. S.* 40:50–1 the low bidder for a municipal contract be afforded a hearing on the issue of responsibility prior to an award of the contract to a higher bidder. *Automatic Laundries, Inc. v. Bayonne Housing Authority,* 45 *N. J. Super.* 266, 270 (*Law Div.* 1957); *Sellitto v. Cedar Grove Tp.,* 132 *N. J. L.* 29, 32 (*Sup. Ct.* 1944); *American Water Corp. v. Mayor & Council of Borough of Florham Park,* 5 *N. J. Misc.* 969, 972 (*Sup. Ct.* 1927); *Kelly v. Board of Chosen Freeholders of Essex,* 90 *N. J. L.* 411, 412–413 (*Sup. Ct.* 1917); *Armitage v. City of Newark,* 86 *N. J. L.* 5, 8–9 (*Sup. Ct.* 1914); *Harrington's Sons Co. v. Jersey City,* 78 *N. J. L.* 610, 614 (*E. & A.* 1909); *Faist v. City of Hoboken,* 72 *N. J. L.* 361, 363 (*Sup. Ct.* 1905). To reject the lowest bid there must be evidence of such character concerning the irresponsibility of the bidder as would cause fair-minded and reasonable men to believe it was not in the best interest of the municipality to award the contract to the lowest bidder. *Automatic Laundries v. Bayonne Housing Authority, supra; Sellitto v. Cedar Grove Tp., supra.* The requirement of a hearing derives from the

basic policy of the bidding laws, *i. e.*, the encouragement of competition, which in turn works to protect the public coffers and prevent chicanery and fraud in public office. See *e. g., Asbury Park Press, Inc. v. City of Asbury Park,* 23 *N. J.* 50, 54 (1956) ; *Hillside Tp., Union County v. Sternin,* 25 *N. J.* 317, 322 (1957). Arbitrary rejection of favorable bids results in the stifling of competition and undermines the policy of the act—hence the requirement of a hearing before a bid can be rejected on grounds of irresponsibility. *Sellitto v. Cedar Grove Tp., supra.*

█ Although responsibility may involve experience, financial ability and facilities necessary to perform the contract, *Hillside Tp., Union County v. Sternin, supra,* 25 *N. J.* at *pages* 317, 323 ; *Sandfort v. Atlantic City,* 134 *N. J. L.* 311, 312 (*Sup. Ct.* 1946) ; *Sellitto v. Cedar Grove Township,* 133 *N. J. L.* 41, 43, 44 (*Sup. Ct.* 1945) ; *Sellitto v. Cedar Grove Tp., supra,* 132 *N. J. L.* at *page* 31; *Paterson Contracting Co. v. City of Hackensack,* 99 *N. J. L.* 260, 263, 264 (*E. & A.* 1923) ; *Peluso v. Commissioners of City of Hoboken,* 98 *N. J. L.* 706, 708 (*Sup. Ct.* 1923), it may also involve the moral integrity of the bidder. *Picone v. City of New York,* 176 *Misc.* 967, 29 *N. Y. S. 2d* 539 (*Sup. Ct.* 1941) ; *Williams v. City of Topeka,* 85 *Kan.* 857, 118 *P.* 864, 38 *L. R. A., N. S.,* 672 (*Sup. Ct.* 1912) ; 10 *McQuillin, Municipal Corporations* (3rd ed. 1950), § 29.73, *p.* 352. See also *Sellitto v. Cedar Grove Tp., supra,* 132 *N. J. L.* at *page* 31.

For purposes of the disposition of the present controversy we will assume that plaintiff's application for a waiver did not constitute a "hearing" such as is contemplated by the cases, and further assume that plaintiff did not waive its right to a hearing by failing to appear at the October 16, 1958 meeting of the housing authority.

█ Assuming, *arguendo,* that plaintiff was not afforded a hearing before the housing authority, the further question is, what kind of a hearing and a hearing to determine what ? Plaintiff was not seeking a hearing to establish his financial ability or trade qualifications to complete the project—these

were not challenged by the defendant housing authority. Plaintiff did not and has not taken issue with the fact of his suspension by the Department of Defense, or the basic underlying facts supporting the determination (even admitting, which we do not, that the housing authority or this court might engage in such a collateral review of the federal administrative determination), or the refusal to grant a waiver.

What, then, are the questions which a hearing would aid the hearers to determine? In its brief before this court plaintiff advises:

> "If plaintiff had been afforded the proper hearing to which it was lawfully entitled, plaintiff could have demonstrated to the local Housing Authority that plaintiff's alleged ineligibility was of the most limited type specified in PHA Circular of 4/12/57. Plaintiff could further have demonstrated to the defendant Housing Authority that the only debarment order entered against plaintiff was limited to contracts with the Defense Department * * * and that the PHA by its own regulation advised the local Housing Authority of the 'extent of restriction' applicable to plaintiff. * * *"

No extended discussion is necessary to reveal that all of the above questions proffered by the plaintiff are questions of law—determinable by reference to the pertinent statutory law and administrative regulations. In this posture the defect (if any there be) in the refusal to grant an administrative hearing is cured by the evidence and arguments presented by plaintiff on those self-same points in the instant *in lieu* proceedings. Where, as here, all of the dispositive issues are legal in character, the nature of the hearing to which a party is entitled is limited to presentation of written briefs and oral argument. See, *Davis, "The Requirement of a Trial Type Hearing,"* 70 *Harv. L. Rev.* 193, 218–222, 275 (1956). *Cf. Wilson v. City of Long Branch,* 27 *N. J.* 360, 383–390 (1958). Such a hearing is of the same type traditionally afforded by appellate courts.

Thus, where the dispositive issues are legal in nature, the adjudicatory facts are not in dispute, and where administrative expertise is not essential to a proper judicial deter-

mination of the cause, a judicial hearing will suffice. *William A. Carey & Co. v. Borough of Fair Lawn*, 37 *N. J. Super.* 159 (*App. Div.* 1955). *Cf. Honigfeld v. Byrnes*, 14 *N. J.* 600 (1954); *Nolan v. Fitzpatrick*, 9 *N. J.* 477 (1952); *Stalford v. Barkalow*, 31 *N. J. Super.* 193 (*App. Div.* 1954). See also *N. J. Zinc Co. v. Board of Review*, 25 *N. J.* 235, 239 (1957); *Davis, Administrative Law*, 267 (1951).

The failure to afford a hearing under the above circumstances was not prejudicial (hence not requiring a remand) within the principles set forth in *In re Masiello*, 25 *N. J.* 590 (1958), and *Nordco, Inc. v. State*, 43 *N. J. Super.* 277, 283–286 (*App. Div.* 1957). See *Moran, "General Administrative Law,"* 13 *Rutgers L. Rev.* 33, at *p.* 62 (1958).

The foregoing conclusions obviate the necessity for resolving the question raised by plaintiff of whether *N. J. S. A.* 55:14*A*–1 *et seq.* authorizes the housing authority to agree with the PHA to conditions which deprive plaintiff of its right to a hearing.

▮▮▮ Turning to the substantive points raised by plaintiff, it is initially asserted that the PHA was without authority to promulgate regulations relating to ineligiblity of individuals or firms debarred from contracting with other federal agencies. We find this argument without merit. One of the founts for the PHA authority is GSA Regulation 15, previously referred to. Plaintiff attacks the statutory authority of the GSA to issue such a "bridging" regulation. The congressional policy controlling GSA functions and duties is declared in 40 *U. S. C. A.*, § 471 to be:

"§ 471. Congressional declaration of policy.
   It is the intent of the Congress in enacting this legislation to provide for the Government an economical and efficient system for (a) the procurement and supply of personal property and nonpersonal services, including related functions such as contracting, inspection, storage, issue, specifications, property identification and classification, transportation and traffic management,  *  *  * management of public utility services, repairing and converting, establishment of inventory levels, establishment of forms and procedures, and representation before Federal and State regulatory bodies; (b) the utilization of available property; (c) the disposal of surplus property; and (d) records management."

Section 481 provides:

"§ 481. Procurement, warehousing and related activities.

(a) The Administrator shall, in respect of executive agencies, and to the extent that he determines that so doing is advantageous to the Government in terms of economy, efficiency, or service, and with due regard to the program activities of the agencies concerned—

(1) prescribe policies and methods or procurement and supply of personal property and nonpersonal services, including related functions such as contracting, inspection, storage, issue, property identification and classification, transportation and traffic management, management of public utility services, and repairing and converting; and

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*·

(b) The Administrator shall as far as practicable provide any of the services specified in subsection (a) of this section to any other Federal agency, mixed ownership corporation (as defined in the Government Corporation Control Act), or the District of Columbia, upon its request."

"Nonpersonal services" are defined in § 472 as:

"\*　\*　\* such contractual services, other than personal and professional services, as the Administrator shall designate."

In our view, the foregoing statutes authorizing the Administrator of the GSA to prescribe "policies and methods of procurement \* \* \* of personal property and nonpersonal services, including related functions such as contracting" such as are "advantageous to the Government in terms of economy, efficiency or service" include authority to issue regulations authorizing federal agencies to declare ineligible for contract awards firms or individuals debarred by other federal agencies.

Considerations at the federal level in regard to policies best designed to promote economy and efficiency in government expenditures are surely not different in kind from considerations at the state and local levels of government, where, as we have previously noted, lack of moral integrity is a valid basis for rejecting a bid.

Further, the PHA has ample authority (quite apart from GSA Regulation 15) to promulgate regulations dealing with ineligible bidders and to so designate firms and individuals

debarred from awards of contracts with other federal agencies. This authority is grounded in part in 42 *U. S. C. A.*, § 1404*a*, which confers upon the Public Housing Commissioner authority to "make such rules and regulations as he may find necessary to carry out his functions, powers and duties." And 42 *U. S. C. A.*, § 1408, further provides:

> "The administration may from time to time make, amend, and rescind such rules and regulations as may be necessary to carry out the provisions of this chapter."

██ Plaintiff further contends that, assuming the validity of the PHA regulations, they were not intended to debar plaintiff from contracting with the housing authority. The PHA circular dated August 1, 1958 referred to previously has, under the columnar heading "Type," the letter "F" following plaintiff's name. The list on which plaintiff's name appears is denominated as list No. 2. The Type symbols A through F are described in an April 12, 1957 PHA circular as follows:

> "*Type A*—Firms and individuals ineligible as to all contracts.
>
> *Type B*—Firms and individuals ineligible as to contracts in any amount exceeding $10,000 * * * for materials, supplies, articles, or equipment for which declared ineligible * * *
>
> *Type C*—Firms and individuals ineligible as to contracts * * * for construction, alteration, or repair of public buildings or public work in the continental United States or elsewhere as specified in the Buy American Act * * *
>
> *Type D*—Firms and individuals, or any firm, corporation, partnership or association in which such contractors have controlling interest, are ineligible in respect to contracts subject to any of the following statutes: [nine statutes enumerated] * * *
>
> *Type E*—Firms and individuals debarred by action on the part of the Public Housing Administration.
>
> Type F—Firms and individuals debarred by action of other Federal executive agencies."

Plaintiff urges that PHA Regulation 103.1–2(b) states that the appearance of a name on list No. 2 (causes other than debarment by Secretary of Labor) "shall be deemed to be *prima facie* evidence that such contractor is not a

responsible bidder *for the type of contract for which debarred."* (Emphasis plaintiff's.) Thus, it is argued that since the type of contract for which plaintiff was debarred was a Defense Department contract, PHA Regulation 103.1–2(b) would "make plaintiff's debarment *prima facie* evidence of its lack of responsibility for a Defense Department contract—and no other!"

And, it is said, this argument is further buttressed by reference to the PHA circular of April 12, 1957 explaining the meaning of the various types of restrictions. Plaintiff contends that the restrictions diminish in severity from Type A (all contracts) down to Type F (debarred by action of other federal executive agencies) ; that since Type E refers to PHA ineligibility, Type F must be something less than ineligibility for PHA contracts.

Plaintiff's arguments are without merit. First, the effect of plaintiff's construction of the PHA regulations and circulars would be that list No. 2 (since the letter F has been assigned to all the names appearing on that list) is furnished by the PHA to all local authorities merely to inform the local authorities that the firms and individuals appearing thereon are debarred from contracting with other federal agencies! The compilation of such information, unless it were intended to indicate ineligibility for PHA contracts, would be an idle expenditure of effort. Examination of the origin of Types E and F reveals that they were intended to indicate the *source* of the determination of ineligibility for the various names appearing on the list rather than the extent of ineligibility. Type A through D of the PHA circular follow the suggested form of list attached to GSA Regulation 15 previously referred to. These may refer to extent of ineligibility and may decrease in severity. Types E and F do not appear on the GSA sample list (although they are authorized by the body of the regulation). These were created by the PHA and are, in a sense, *sui generis.* In our view Type F was designed to accept the authorization of GSA Regulation 15 that "Each executive agency is authorized to debar in the public interest a firm

or individual for \* \* \* Debarment by some other executive agency," and therefore was intended to convey the source of the ineligibility.

For the reasons advanced the judgment below is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For reversal*—None.