179 N.J. Super. 479 (1981)
432 A.2d 564
SUBURBAN RESTORATION COMPANY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JERSEY CITY HOUSING AUTHORITY, A GOVERNMENTAL UNIT CORPORATE AND POLITIC OF THE STATE OF NEW JERSEY AND WATERTROL, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 9, 1981.
Decided June 30, 1981.
*481 Before Judges FRITZ, POLOW and JOELSON.
Randy R. Kopf argued the cause for appellant (Convery & Kopf, attorneys; James V. Convery, III, on the brief).
Spencer N. Miller argued the cause for respondent Jersey City Housing Authority (Krivit, Miller, Galdieri & Dronzek, attorneys).
The opinion of the court was delivered by FRITZ, P.J.A.D.
This appeal concerns the rejection for cause by a municipal agency of the lowest bid on a public contract. The trial judge determined that the action of the agency was justified and lawful. In the action by the lowest bidder, he entered judgment in favor of the agency and the second lowest bidder. We affirm.
On September 30, 1980 defendant Jersey City Housing Authority (JCHA) opened bids for a public contract which called *482 for certain waterproofing and caulking of one of JCHA's buildings, a repair project identified as window waterproofing bidding. Plaintiff Suburban Restoration Co., Inc. (Suburban) submitted the low bid of $22,999. Codefendant Watertrol, Inc. was the second lowest bidder with a bid of $27,000.
On that same day the JCHA Director of Engineering advised plaintiff by telephone that a "responsibility hearing" would be held on October 1, 1980 as to "plaintiff's responsibility to perform the contract." At this hearing JCHA rejected plaintiff's bid and awarded the contract to Watertrol. The rejection was based upon the manner of performance by Suburban on a prior JCHA contract.
Plaintiff filed a complaint in lieu of prerogative writs, seeking to set aside the actions of JCHA in awarding the contract to Watertrol and asking for an order restraining JCHA from entering into a contract with Watertrol. After argument on an order to show cause, the trial judge rescinded the action of JCHA on the ground that plaintiff was not given a "fair opportunity to participate meaningfully in [the responsibility] hearing" and had not been "alerted to the specifics of the complaint against them [sic] with respect to the prior work." JCHA, given the option of holding another responsibility hearing or awarding the contract to plaintiff, opted to hold a second responsibility hearing. Following a hearing at which Suburban was represented by counsel and presented evidence, JCHA expressly and formally found facts in a writing. On the basis of these, it concluded that Suburban had performed a prior identical contract improperly, not in compliance with specifications and in a manner lacking the moral integrity required of a bidder for public contracts. By resolution it again disqualified plaintiff and awarded the contract to Watertrol.
Plaintiff returned to the Superior Court where, following argument on the agency's record, the judgment here appealed was entered.
*483 It does not appear controverted that the contract here being considered involved "identical work on the identical building" as the contract previously awarded Suburban and that each required the contractor to "remove all old caulking on the window wall sections and recaulk it" with a specified material. With respect to the prior contract, the president of Suburban categorically advised the JCHA at the second responsibility hearing, after several unresponsive answers to an inquiry as to whether his workers removed all the old caulking, "We remove all caulking." (Emphasis supplied.) There was ample evidence in the hearing from which a factfinder could conclude this statement was simply not true. Indeed, JCHA found it untrue and Judge Gaulkin in the Superior Court determined that such a finding "cannot be said to have been arbitrary or unreasonable." Our independent review of the record produces hearty concurrence.
So the question simply becomes, as Judge Gaulkin realized, whether intentional deviation from contract specifications, unmistakably implied in what the trial judge correctly identified as "a somewhat muted statement of the Authority's finding," is sufficient to premise a determination of the absence of moral integrity and to justify a disqualification. He thought so and so do we.
Fundamental to an appreciation of a significant purpose of the Local Public Contracts Law, N.J.S.A. 40A:11-1, is the understanding that the important consideration of protection due the public and its dollar mandates contracts be let not to the lowest bidder, but to the lowest responsible bidder. N.J.S.A. 40A:11-6.1. Responsibility in the sense intended by the Legislature has been succinctly and informatively defined as that characteristic the absence of which "would cause fair-minded and reasonable men to believe it was not in the best interest of the municipality to award the contract to the lowest bidder." Arthur Venneri Co. v. Paterson Housing Auth., 29 N.J. 392, 402 (1959). Such a determination "may also involve the moral integrity of the bidder." Id. at 403.
*484 As was the trial judge, we are satisfied that a prior intentional noncompliance with the mandatory terms and conditions, or any of them, of a public contract justifies a conclusion that to give that contractor a second opportunity to do this is not in the public interest. Further we are satisfied that if an indictment for conspiracy to bribe a state police officer, Trap Rock Industries v. Kohl, 59 N.J. 471, 482 (1971), cert. den. 405 U.S. 1065, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972), and an unanswered allegation of participation in a fraudulent billing scheme involving another public contract, Consolidated Enterprises, Inc. v. Newark Housing Auth., 159 N.J. Super. 75, 82 (App.Div. 1978), certif. den. 77 N.J. 482 (1978), can be the basis for a finding of a lack of moral integrity, then deliberate noncompliance with identical contract specifications on a prior occasion can easily support the same conclusion.
Plaintiff relies heavily on Stamato & Co. v. Vernon Tp., 131 N.J. Super. 151 (App.Div. 1974), claiming that the present matter "is controlled" by it. In Stamato "[a]t best, ... [the] dispute [was] as to whether there had been defective performance in ... work done as an `extra' after plaintiff had completed a contract awarded it as the lowest bidder for the repavement of portions of four other township roads." Id. at 157. In our judgment, this defective performance is a far cry from intentionally failing to complete at all a certain contract obligation. Stamato is clearly distinguishable. The fact that this failure was obscured, if not wholly hidden, by other contract work which was performed, may not exacerbate the wrongfulness of the intention  culpability of this nature is seldom a relative thing  but it does emphasize the necessity for care and foresight in caring for "the best interest of the municipality." Arthur Venneri Co. v. Paterson Housing Auth., supra, 29 N.J. at 402.
We recognize that such a determination as the one here made must not be arbitrary, but must be "based upon facts tending to support the determination." Stamato, supra, at 156. *485 We now become the third tribunal to be satisfied that this standard has not been here offended. We do not accept plaintiff's suggestion that the determination of intentional noncompliance here constitutes an assertion of fraud, although with appropriate findings it might well. But a finding of fraud is not necessary: the supportable determination of a lack of moral integrity in the contractor is enough.
Finally, plaintiff insists that "JCHA has available remedies in law to pursue any defective performance of the 1976 contract." This may be, and the agency may be well advised (if not obligated by law) to pursue such a course. Nevertheless, this fact does not serve in anywise to diminish the serious consideration which had to be given to whether it was in the best interest of the municipality to award this contract to this bidder. It is quite evident that the Legislature did not intend to require a municipality to undertake a potential for successive law suits simply on the basis that a past transgressor submitted the lowest bid.
Affirmed.