JOHN L. ARMITAGE, PROSECUTOR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK AND ESSEX CONSTRUCTION COMPANY.

Argued April 20, 1914—Decided June 16, 1914.

The common council of the city of Newark advertised for proposals for the erection of a public market house (*a*) by a general contract or (*b*) by separate items that together embraced the entire work. The contract was awarded to a bidder who proposed to do the work by general contract for $662,700, notwithstanding that the bid for doing the same work by bidders on separate items was $646,212. *Held*—

1. Where proposals for public work are advertised for under the act of April 1st, 1912, the award of the contract, if made under such advertisement, must follow its terms and be given to the lowest responsible bidder or bidders who have complied with the advertised conditions.

2. If the public body decides to change the terms of the advertised competition it has the right to reject the bids received thereunder and to advertise for new ones, but it cannot award a valid contract under the advertised competition to one who was not the lowest bidder.

3. One who is the lowest bidder under an advertised competition, acquires thereby a *status* that entitles him to a hearing before a valid contract can be awarded to somebody else.

4. There is no competition among bidders for a public work as to the price at which it will be done unless such work in all its essential particulars is the same for all bidders; if, therefore, the length of time required to do the work is to enter into the estimate, it should be the same for all bidders, since if each bidder determines this for himself no two bids will be on the same basis, which is the very essence of competition.

On *certiorari*.

This suit brings up for review the proceedings of the common council of the city of Newark which resulted in the awarding of a contract for the erection of a public market building to the Essex Construction Company. The proceedings prior to the actual awarding of the contract were conducted on the part of the city by the market committee of

common council. On May 2d, 1913, at a special meeting of this committee, plans and specifications were adopted and a motion carried that bids for the work would be received on Monday, May 26th, 1913. Advertisement was thereupon made for sealed proposals.

This advertisement contained the following announcements to bidders:

"Proposals will be received for the erection and construction of the entire work under general contract, and separate proposals will be received for the construction of the building as follows:

"Item 1. Mason work, &c.

"Item 2. Carpenter work, &c.

"Item 3. Electrical work, &c.

"Item 4. Plumbing, &c.

"Item 5. Well, &c.

"Item 6. Boilers, &c."

It is admitted that within these items was embraced all of the work covered by the general contract. And the paragraph that follows speaks repeatedly of the person *or persons* to whom the contract may be awarded.

It was further provided that "bidders must specify in their proposals the number of days required to finish their work should the above work or works be awarded to them."

On May 26th, 1913, at the hour specified in the advertisement the bids were opened. There were three bids for the doing of the whole work by general contract and some twenty-five or more bids on separate items or combinations thereof.

The lowest bid for the construction of the whole work was the sum of the six lowest bids on the separate items, viz., $646,212.

The next lowest bid was that of the Essex Construction Company, which was for the whole work by a general contract at $662,700.

On January 19th, 1914, the common council adopted a resolution awarding the contract for the construction of the public market to the Essex Construction Company. On February 9th, 1914, this contract was executed, and March 6th,

1914, this writ of *certiorari* was allowed by the Supreme Court.

The pertinent statutory provision is "An act relating to expenditures by public county, city, town, township, borough and village bodies," approved April 1st, 1912 (*Pamph. L., p. 593*), which reads as follows: "Where and whenever hereafter it shall be lawful and desirable for a public body in any * * * city * * * to let contracts for the doing of any work or for the furnishing of any materials or labor, where the sum expended exceeds the sum of five hundred dollars, the action of any such public body * * * shall be invalid unless such public body shall first publicly advertise for bids therefor and shall award said contract for the doing of said work or the furnishing of such materials or labor to the lowest responsible bidder; provided, however, that said public body may nevertheless reject any and all bids."

Before Justices GARRISON, TRENCHARD and MINTURN.

For the prosecutor, *Fort & Fort.*

For the city of Newark, *Frank E. Bradner.*

For the Essex Construction Company, *Herbert Boggs.*

The opinion of the court was delivered by

GARRISON, J. Clearly, the lowest bid did not get the contract. The lowest bid, under the invitation to bidders, was the aggregate of the lowest bids for separate items.

This bid was $16,488 lower than that of the successful bidder. The circumstance that this lowest bid was made up of the separate proposals that had been invited is not a lawful ground for discrimination against it; such proposals were made in strict compliance with the terms of the advertisement for bids and under the statute the award must follow such advertisement or the contract will be invalid.

In extenuation of this violation of the statute it is said that it was within the discretion of the city authorities to decide

that it was more advantageous to the city to have its work done by a general contractor than by the bidders for the separate items. True, it was not only the right but the duty of the city authorities to decide this question, but when and how often? They had exercised this right once when they publicly advertised that bids of either sort would be received and that the contract would be awarded to the lowest responsible bidder. If they may exercise it a second time it must be in such a way as not to violate the statute, which is clearly done if the change of heart takes place after the bids are opened and results in depriving the lowest bid of its statutory vantage, and the awarding of the contract contrary to the statute. If, after the bids were received, the city decided that it would be better to contract only with a general contractor, it was open to the city to reject all bids and to readvertise for bids by general contractors only. Common fairness, as well as statutory obligation, require such a course and condemn the one that was actually pursued in this case which violated not only the letter but the spirit of the statute in every essential respect. Nothing would so fatally discourage bidders as a well-founded suspicion that contracts are not awarded to the lowest bidder who complied with the conditions of the public advertisement; and to encourage competitive bidding was one of the main purposes of the statute in question. By the express terms of the statute, therefore, the contract "let" in the present case is "invalid."

If, however, we are wrong in reading this statute as it is written and in deeming that it means just what it says, and if the correct view is that the city after discovering that the bidders on separate items are the lowest bidders, may change its advertised scheme and decide that the competition shall be limited to bidders for the doing of the entire work in a single contract, then and in that case the present award is invalid, because if any such decision was made the lowest bidders under the public advertisement for bids were entitled to be heard upon that question before it was decided against them. The *status* of the lowest bidders carrying with it this right, is legally indistinguishable from that accorded to such bidders

in *McGovern* v. *Board of Public Works,* 57 *N. J. L.* 580, and *Faist* v. *Hoboken,* 72 *Id.* 361.

This last-cited case also disposes of the notion that the statute can be evaded under color of the rejection "of any and all bids."

For the reasons stated the contract in the present case is invalid and must be set aside.

There is another flaw in these proceedings that ought not to be passed over merely because no demonstrable harm has come of it in the present case. I refer to the requirement of the advertisement that each bidder must specify the number of days he will require to finish the work. According to all our cases, if this element of time is to enter into the competitive scheme, it should be the same for all, not left for each bidder to fix for himself and thereby estimate his bid upon a basis different from that of any other bidder. The general vice of this course is that no common standard for the competition is set up, and as was said by the Court of Errors and Appeals in *Browning* v. *Bergen,* 79 *N. J. L.* 494, "where no common standard is set up no competition is proposed."

"No contract," said Mr. Justice Van Syckel, in *Van Reiper* v. *Jersey City,* 58 *N. J. L.* 262, "can be properly upheld under proposals which do not require competitive bids upon the *same definite basis.*"

Of this definite basis time is as much an element as is the number of men to be employed or the wages to be paid, which if required to be specified by each bidder would destroy any semblance of competition as to price.

In a recent case in this court we expressly held that unless the length of time was alike for all bidders there could be no such competition as the law requires. *Johnson* v. *Atlantic City,* 85 *N. J. L.* 145.

The mischief to be apprehended is not that contracts will be awarded to the bidder who will take the least time rather than to him who will take the least money, *i. e.,* to the lowest bidder, but that, owing to this multiple standard, it is impossible to tell who is, or rather would have been, the lowest bidder had there been a common standard of time alike for

all; or, what amounts to the same thing, had the element of time been left out altogether.

Experience in dealing with evasions of this law teaches that it is better to keep the door wide open than to try to close one that is, perhaps purposely, left a little ajar.

At all events, upon both reason and authority, a contract based upon such non-competitive bidding is not a valid one under the law we are now considering.

It is claimed by the prosecutor that the delay of eight months in awarding this contract will cost the taxpayers anywheres from $50,000 to $80,000, owing to the drop in prices of material during that period. The result we have reached on the main question renders it unnecessary to pass also upon this one. This remark applies also to the claim that the entire proceeding is vitiated by the addition to the market-house of a second story not intended for market purposes, but by which it is claimed that upwards of $200,000 are added to the cost of the market building. And the same remark applies also to the "well" item and to all the other points made in the brief of counsel for the prosecutor, as to which we simply express no opinion, one way or the other.

For the specific reasons given, the contract brought up by this writ is set aside, with costs.