NICHOLAS SELLITTO, PROSECUTOR, v. TOWNSHIP OF CEDAR GROVE, A MUNICIPAL CORPORATION, AND C. D. MARANGI, RESPONDENTS.

Submitted June 30, 1944—Decided July 14, 1944.

Before Justices CASE, BODINE and PORTER.

For the prosecutor, *Thomas Brunetto* and *Joseph C. Cassini.*

For the respondent Township of Cedar Grove, *Samuel W. Boardman, Jr.,* and *Fred G. Stickel, III.*

For the respondent C. D. Marangi, *Alfred J. Grosso.*

The opinion of the court was delivered by

CASE, J.   The writ brings up an award to C. D. Marangi of a contract to collect and dispose of the garbage, ashes and refuse of the Township of Cedar Grove, County of Essex. Marangi had been doing that work.   His contract year was to expire on April 1st, 1944, and the Board of Commissioners of the township, pursuant to a resolution passed by them, advertised for bids for the ensuing year, all such proposals to be addressed to the board, in care of the township clerk. In due season the board met and received and opened the bids, which were as follows:

| | |
|---|---|
| Nick Sellitto ........ ...... | $6,500 |
| M. Iommetti & Sons .......... | 6,499 |
| C. D. Marangi .............. | 7,200 |

The matter of award was, on motion, laid over for two weeks, and at the adjourned meeting the board, on the assigned reason that the bids were too high for the service to be rendered, rejected all bids and directed the clerk to readvertise. At the appointed time the board again met, received and opened bids.   Then there were only two bids, as follows:

| | |
|---|---|
| N. Sellitto ................. | $5,749 |
| C. D. Marangi .............. | 6,400 |

The minutes show that "On motion of Mayor Tierney, duly seconded, action on the above listed proposals was laid over for investigation."   At a meeting held three weeks later the

board received a report from Mayor Tierney to the effect that on his calculation Sellitto would not make any profit at his bid figure of $5,749 and further that Sellitto had never before had a contract with a municipality; and thereupon the board made the award to Marangi at his bid of $6,400.

Thus, one set of bids was rejected on the theory that the low bids of $6,499 and $6,500 (Sellitto's) were too high; and on readvertisement Sellitto's low bid of $5,749 was rejected because it was too low; and the award went to Marangi, always the high bidder, at only $99 less than the earlier bid of M. Iommetti & Sons, and $100 less than the original bid of Sellitto. That bare summary permits the inference that the constant purpose, as well as the ultimate result, was to make the award to Marangi. The legal question is whether the award was made to "the lowest responsible bidder," in obedience to *R. S.* 40:50–1.

The point sought to be made against Sellitto is that he was not "responsible," and the facts upon which the point is rested are that he had not made his price high enough to allow himself a profit and that he had not previously had a municipal contract. Sellitto's sound financial and moral integrity are not in dispute; and since that is so the concern of the Commission over his taking the job without profit rather loses force. It may well be, as he said the fact was, that he would make his profit on other jobs that would work in with his contract. The municipality never questioned and does not now question that Sellitto had the necessary equipment for the work. The contract was of the sort generally referred to as a "scavenger contract." True, Sellitto had never had such a contract, or perhaps any contract, with a municipality. But he had had experience over a number of years as scavenger in the Township of Hanover—not for the township as his informal questionnaire mistakenly stated, but under private employment within the township—as was certified to Cedar Grove Township by the township clerk of Hanover Township in these words: "I am well acquainted with Mr. Sellitto of Livingston and during my acquaintance with him have always found him to be most reliable. He has been serving as scavenger for the Township of Hanover

for some time, and while providing this service for us we can compliment him highly upon his way of handling refuse." It is not clear what technique there is in gathering ashes and garbage that required the added experience of working under a municipal contract. There was no distinct finding that Sellitto was not responsible.

Sellitto was the lowest bidder at the second advertised competition. As such he acquired a *status* which entitled him to a hearing before a valid contract might be awarded to another. *Armitage* v. *Newark, 86 N. J. L.* 5. If the allegation is "that a bidder is not responsible he has a right to be heard upon that question, and there must be a distinct finding against him, upon the proper facts, to justify it." *Faist* v. *Hoboken, 72 Id.* 361; *Kelly* v. *Freeholders of Essex, 90 Id.* 411. *Prima facie* he was entitled to receive the contract. *Ianniello* v. *Harrison, 4 N. J. Mis. R.* 111. Mr. George Tierney was mayor and one of the Board of Commissioners. It was his contention, as a witness in the case, that the matter of garbage collection was, by reason of the Walsh Act under which the township operated, within his Department of Public Affairs; but that contention was left in weak position by reason of incompetent proof and by further reason of the assumption by the entire Commission of all control over the advertisement for bids, the opening of bids, the disposition of bids and the awarding of the contract. The contention was doubtless advanced in order to put the mayor in capacity to hold a hearing on the award. What the mayor did was to telephone Sellitto to come to his office. Sellitto came, bringing one Earrusso upon whose land Sellitto proposed to dump the refuse, and answered the mayor's questions. Upon the proofs we find that Sellitto was not on notice that the interview was of the nature of a hearing upon his rights or indeed that the conference was anything else than the making of an investigation on behalf of the Commission within the purview of the resolution mentioned above. An investigation for the information of the Commission is one thing; a hearing accorded a bidder as a matter of right may be quite another. At most, in our finding, that meeting was of the type of informal discussion pronounced inadequate in *American*

*Water Corp.* v. *Mayor, &c., Florham Park,* 5 *Id.* 969. No effort was made to check upon the information that had come from the clerk of Hanover Township, and the reason given for the omission is that the communication came in under the first bid, not under the second; nevertheless the letter was in the mayor's possession.

Our Court of Errors and Appeals, in speaking of the statutory expression "shall award  *  *  *  to the lowest responsible bidder" and of the duty of a municipal governing body with respect thereto, said: "We do not think that it is necessary to prove corruption or fraud on the part of the Commission. The question for their determination was whether the appellant was so lacking in the experience, financial ability, machinery and facilities necessary to perform the contract as to justify a belief upon the part of fair-minded and reasonable men that it would be unable to perform its contract." *Paterson Contracting Co.* v. *Hackensack,* 99 *N. J. L.* 260 (at *p.* 263).

It appears to us that the Commission was satisfied with the work of Marangi and, having got his bid reduced, wanted him to have the award and gave it to him. That is an understandable attitude; but it loses sight of the fact that Marangi's lowered price was due to the competition. To quote further from *Paterson Contracting Co.* v. *Hackensack, supra:*

"To encourage contractors to submit bids for public improvements should be the aim of every community. Numerous bidders create competition. Competition lowers the costs. If bids are rejected arbitrarily or capriciously contractors will not take the time and expend the money necessary to submit proposals. They will infer favoritism. This will result in few bidders and higher bids. The statute providing for the award of a contract for a public improvement to the lowest responsible bidder was enacted for the protection of bidders."

We conclude that Sellitto was not shown by competent evidence to be irresponsible, that he was not put on fair notice that a hearing was being accorded him and that the competent proofs do not show that a hearing was held; all of

which may be summed up in saying that due regard was not had for Sellitto's *status* as the low bidder.

The award will be set aside, without costs.