115 N.J. Super. 442 (1971)
280 A.2d 203
CARDELL, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
TOWNSHIP OF WOODBRIDGE, A MUNICIPAL CORPORATION IN THE COUNTY OF MIDDLESEX, STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1971.
Decided July 19, 1971.
*444 Before Judges LEWIS, MATTHEWS and MINTZ.
Mr. Norman Robbins argued the cause for appellant (Mr. Joseph Lunin, on the brief).
Mr. Stewart M. Hutt argued the cause for respondent (Messrs. Hutt & Berkow, attorneys; Mr. George J. Otlowski, Jr., on the brief).
The opinion of the court was delivered by MATTHEWS, J.A.D.
Defendant Township of Woodbridge (township) appeals from two judgments in favor of plaintiff Cardell for $14,506.36 and $7,605.55 for its wrongful rejection of Cardell's low bids on construction contracts No. 3306 and No. 3115, respectively. Cardell cross-appeals from the trial judge's determinations of damages. Because the parties and issues in both cases are identical, we consolidated the appeals.
On June 25, 1969 the township advertised pursuant to N.J.S.A. 40:50-1 et seq., that it would receive sealed public bids on contract No. 3306, which involved the reconstruction of several streets in the township. The published notice contained a statement usually found in such solicitations for public contracts:
The Town Council reserves the right to accept or reject any or all bids which in its opinion will be in the best interests of the Township.
A similar warning appeared in the notice to bidders and in the specifications.
*445 On July 6, 1969 the six sealed bids received in response to the advertisement were opened, and they revealed the following bidders and amounts:

 Cardell, Inc. $114,826.10
 Middlesex Concrete Products
 and Excavating Company 119,982.80
 Manzo Contracting Co., Inc. 128,892.50
 Della Pello Contracting Co.,
 Inc. 129,772.00
 Halecrest Company 144,158.20
 Earle Asphalt Company 212,827.50

Cardell's low bid was less than the township engineer's estimate of the cost of the construction work ($120,702) by approximately $6,000.
Despite the township engineer's recommendation that Cardell's offer be accepted, the township council, by resolution of August 5, 1969, refused all bids and ordered a readvertisement of the contract. No reason for the blanket rejection was given in the resolution. At the trial, however, it was disclosed that the council was of the opinion that even lower bids might be received because of the onset of winter and its attendant slowdown in construction. Neither the trial court nor this court has been apprised of any fact that warranted such a conclusion.
On August 13, 1969 the township readvertised for bids. The new contract was designated No. 3306-A and was virtually identical in its specifications to No. 3306. On August 28 the sealed bids received were opened with the following results:

 Manzo Construction Co., Inc. $107,734.50
 Middlesex Concrete Products
 and Excavating Company 112,901.45
 Cardell, Inc. 116,121.40

Manzo was now the low bidder and plaintiff Cardell the high bidder. On September 2, 1969 the township council awarded the contract to Manzo.
*446 The facts surrounding contract No. 3115 are virtually identical to those just related as to contract No. 3306. 3115 involved similar repaving work to be performed in other parts of the township. On July 23, 1969 the township advertised for sealed bids, and on August 11, 1969 the opening of the four bids produced the following offers:

 Cardell, Inc. $ 95,987.75
 Middlesex Concrete Products
 and Excavating Co. 101,937.75
 Manzo Contracting Co., Inc. 103,641.50
 Trap Rock Industries, Inc. 120,085.00

Cardell's bid was the lowest of those received. Moreover, even the highest bid under 3115 was less than the township engineer's estimate of the cost of the work which he figured to be $124,117.50. By resolution of August 19, 1969, however, the township rejected all bids, offering no reason for its action. The deposition of council president Gene Tomasso, used at trial, reveals that he "had no reason" for thinking that a readvertisement of the contract could produce lower bids. None of he township's witnesses could specifically recall ever having rejected a responsible party's bid which was lower than the engineer's estimate.
The contract was redesignated No. 3115-A and was readvertised. Three bids were received, and the lowest was again Cardell's at $99,999.99. Once again, all bids received were rejected  this time because Manzo had not been properly notified of a change in the timetable for receiving and opening bids.
Finally, on October 1, 1969 the contract was redesignated No. 3115-B and was advertised for the third time. Six bids were received:

 Manzo Contracting Co., Inc. $ 99,588.75
 Mountaineer Construction
 Company 104,135.25
 Cardell, Inc. 104,846.00
 Middlesex Concrete Products and
 Excavating Company 105,560.25

*447
 Trap Rock Industries, Inc. 110,574.75
 Halecrest Company 119,488.75

On October 21, 1969 contract No. 3115-B was awarded to Manzo Contracting Co., Inc.
Cardell instituted legal proceedings regarding both contracts 3306 and 3115 immediately preceding the opening of the bids on the respective successor contracts 3306-A and 3115-A. A supplemental complaint was also filed as to 3115-A. All these complaints sought an order declaring that Cardell be awarded the contracts in suit and requested injunctive relief prohibiting township from readvertising or awarding the contracts to other bidders and from doing anything in furtherance of the resolutions which rejected the various bids.
A temporary restraining order granting the requested injunctive relief was entered on August 13, 1969, and on August 26, 1969, upon township's motion, the restraint was amended to allow for advertisement, acceptance and review of bids respecting 3306-A. Again, at township's behest, the restraint was dissolved on October 7, 1969. Cardell strenuously resisted these motions.
Upon separate trials of these matters the trial judge found that township had wrongfully rejected Cardell's bids and estimated damages on both contracts 3306 and 3115 to be "the difference between the contract price and the cost of performance or production."
With respect to 3306 the trial judge rejected Cardell's cost estimate of $94,000 because it "had not sustained the burden of proof" and accepted as credible the cost estimate of Eugene De Stefano, township's supervising principal engineer, in the amount of $99,244.75 as a reasonable projection of costs. In addition to De Stefano's estimate, the trial judge added .5% bond premium totalling $575 and $500 as the approximate salary of a construction superintendent. The trial judge specifically determined that there was no credible evidence of extra engineering costs nor of any "other item or items which might be identified or associated *448 as overhead." The cost of performing 3306 was therefore computed to be $100,319.75, and damages were fixed at $14,506.35.
With regard to 3115, the trial judge stated: "Consistent with the proofs in the prior case, the determination of damages will be in the amount of $8,605.55 minus the salary of Bill Jones, the Supervisor. * * * [and] the premium on the maintenance bond as submitted as $500." Damages were fixed at $7,605.55.
Defendant's appeal from the whole of the judgments under review is grounded upon the theories that (1) "having [expressly] reserved the right to reject all bids and having exercised its powers without fraud or bad faith, it was entitled to reject all bids" in the good-faith belief that such rejection would result in lower bids; (2) the trial court erroneously omitted general costs of overhead in computing plaintiff's construction costs in the absence of proof that such overhead costs were inapplicable, and (3) plaintiff's opposition to defendant's motion to join Manzo as an interested party precluded its recovery, if any, to the difference between Manzo's and plaintiff's bids.
Plaintiff, in its cross-appeal, contends that the trial court's estimation of its damages was against the weight of the evidence.
On the issue of liability, defendant argues that our bidding statute, N.J.S.A. 40:50-1, does not proscribe even the arbitrary rejection of bids provided that rejection is made in good faith. It contends that the absence of the provision contained in a predecessor bidding statute, empowering the governing body to "reject any and all bids," L. 1912, c. 342, at 593-594, indicates the Legislature's intention to leave "it for the municipality to specifically, rather than automatically, reserve the right to reject all bids if it subsequently wished to avail itself of that right."
None of the cited New Jersey cases support these contentions.
*449 In every instance in which the question of the power to reject bids has arisen, our courts have assiduously avoided deciding this "troublesome problem." See, e.g., Scatuorchio v. Jersey City Incinerator Authority, 14 N.J. 72, 91 (1953); Cardell, Inc. v. Madison Tp., 105 N.J. Super. 594, 601 (Law Div. 1969), aff'd 105 N.J. Super. 604 (App. Div. 1969), rev'd dissenting o.b. 54 N.J. 151 (1969); Poling v. Roman, 86 N.J. Super. 484, 488-489 (Law Div. 1965). They have, however, intimated the existence of that power. See Scatuorchio, supra, 14 N.J. at 91; Cardell, supra, 105 N.J. Super. at 601; Poling, supra, 86 N.J. Super. at 488; cf. Arthur Venneri Co. v. Paterson Housing Authority, 29 N.J. 392, 402-403 (1959), and Coward v. Bayonne, 67 N.J.L. 470 (Sup. Ct. 1902). Additionally, see Schwartz and Nagle Tires v. Board of Chosen Freeholders, 6 N.J. Super. 79, 81-82 (App. Div. 1949), certif. den. 4 N.J. 127 (1950), wherein this court, in speaking of N.J.S.A. 40:25-2, which is identical to N.J.S.A. 40:50-1 in the critical respects here considered, stated, "where the statute applies, it is mandatory, leaving no room for discretion, except to give the contract to the lowest responsible bidder or else to reject all bids." The intimation is even stronger in regard to cases where the right to reject was reserved. See Poling, above, at 86 N.J. Super. 488-489.
Assuming the existence of the power to reject bids, the logical inquiry is to ask how such power must be exercised. Defendant suggests that arbitrariness and capriciousness is immaterial provided that the power is exercised in good faith. Although there is support for this theory in other jurisdictions  see the discussion and cases cited in Annotation, "Right of public authorities to reject all bids for public work or contract," 31 A.L.R.2d 469 (1953)  our courts do not subscribe to that view. On the contrary, they have more than once criticized the arbitrary rejection of bids. Venneri, supra, 29 N.J. at 403; Scatuorchio, supra, 14 N.J. at 88; Sellitto v. Cedar Grove, 132 N.J.L. 29 (Sup. Ct. *450 1944); Cardell, supra, 105 N.J. Super. at 601; Poling, supra, 86 N.J. Super. at 489.
In Paterson Contracting Co. v. Hackensack, 99 N.J.L. 260 (E. & A. 1923), the Court of Errors and Appeals expressed the purpose of bidding statutes thusly:
* * * To encourage contractors to submit bids for public improvements should be the aim of every community. Numerous bidders create competition. Competition lowers the cost. If bids are rejected arbitrarily or capriciously, contractors will not take the time and expend the money necessary to submit proposals. They will infer favoritism. This will result in few bidders and higher bids. The statute providing for the award of a contract for a public improvement to the lowest responsible bidder was enacted for the protection of bidders. [at 264]
This declaration has repeatedly received juridical approbation. Venneri, supra, 29 N.J. at 402-403; Asbury Park Press v. City of Asbury Park, 23 N.J. 50 (1956); Sellitto, supra, 139 N.J.L. at 33; Cardell, supra, 105 N.J. Super., at 605; Poling, supra, 86 N.J. Super. at 489.
The unbridled power to reject bids, even where such right is served in the invitation for bidding, if allowed, would violate our public policy, contravene our Legislature's intention in enacting the competitive bidding statute and, in fact, afford a means by which "the statute can be evaded under color of the rejection `of any and all bids.'" Armitage v. Newark, 86 N.J.L. 5, 9 (Sup. Ct. 1914). Even under the 1912 statute authorizing the rejection "of any and all bids," such action was wrongful. Armitage, supra. It is not less so today. Scatuorchio, supra, 14 N.J. at 91; Cardell, supra, 105 N.J. Super., at 601-602; Poling, supra, 86 N.J. Super. at 488.
We do not imply that a municipal governing body is without power to reject all bids under proper circumstances. No municipal governing body could effectively engage in competitive bidding without such power. At the very least, the existence of the possibility of total rejection of bids serves as a strong inducement to bidders to keep their *451 bids as low as circumstances permit. Suffice it to say that when a municipal governing body concludes in good faith that the purposes of the public bidding statute are being violated, it may reject all bids submitted and in its discretion order a readvertising of the contract. Furthermore, should the lowest bid substantially exceed the municipality's cost estimate or its appropriation for the job, or should circumstances arise which might cause the municipal governing body to abandon or substantially revise the project, then a total rejection of bids might well be required.
We find that the proofs more than amply support the conclusions reached by the trial judge in each of the cases. Defendant's rejection of plaintiff's low bids for the respective contracts was totally unwarranted.
Turning to the issue of damages, defendant argues that "plaintiff did not introduce any evidence to permit the trial judge to determine whether general overhead costs should have been included in figuring total costs. Nor, did the judge rule on the point." This is incorrect. The proofs demonstrated that overhead was constant and, therefore, appropriately excluded. Apex Metal Stamping Co. v. Alexander & Sawyer, Inc., 48 N.J. Super. 476, 482-486 (App. Div. 1958).
Defendant's third point claiming a mitigation of damages is unsupported and unsupportable, especially since its dilemma was self-inflicted. Plaintiff's prompt action to review the initial rejections and to restrain readvertisement, bidding and award was consistent with the procedures specified in Richardson Engineering Co. v. Rutgers, etc., 51 N.J. 207, 219-220 (1968), and any legal or procedural impropriety adversely affecting defendant was attributable to defendant's wrongful and precipitant conduct.
In its cross-appeal, plaintiff contends that the trial judge improperly accorded too much significance to the testimony of De Stefano and that he improperly considered estimated or speculative cost statements in preference to the actual cost statements testified to by its witnesses. In essence, plaintiff's *452 complaint is that the trial judge believed De Stefano and disbelieved its witnesses. Obviously, the court was not obliged to believe plaintiff.
Affirmed.