117 N.J. Super. 431 (1971)
285 A.2d 55
M.A. STEPHEN CONSTRUCTION CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND SARK KAVOOKJIAN, PLAINTIFFS-APPELLANTS,
v.
BOROUGH OF RUMSON, A MUNICIPAL CORPORATION OF THE COUNTY OF MONMOUTH, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1971.
Decided December 16, 1971.
*433 Before Judges LEWIS, KOLOVSKY and HALPERN.
Mr. Frank A. Palmieri argued the cause for appellants.
Mr. William R. Blair, Jr. argued the cause for respondent (Messrs. Parsons, Canzona, Blair & Warren, attorneys).
The opinion of the court was delivered by LEWIS, P.J.A.D.
Plaintiffs M.A. Stephen Construction Co., Inc. (Stephen Co.) and Sark Kavookjian, a borough taxpayer, appeal from a summary judgment of the Law Division entered on January 5, 1971 in favor of defendant Borough of Rumson (Rumson or municipality) which dismissed their complaint in lieu of prerogative writs and vacated the restraints imposed by a consent order of this court on December 14, 1970.
The critical issues posited on appeal are: (1) whether a municipality that advertises for public work may reserve the right to reject any and all bids, (2) if it may and does, whether the exercise of that reserved right by Rumson in the instant case was valid, and (3) whether, in the circumstances, summary judgment in favor of either party was appropriate. Before approaching these questions, a summary of the relevant facts and circumstances, as revealed by the record, is essential.
In early October 1970 Rumson advertised for bids on proposed contracts for sewer installations, expressly reserving to itself, in the notice and instructions to bidders, the right to reject all bids. On October 22 the municipality opened the sealed proposals, all of which were accompanied by appropriate bid bonds and certified checks, and the bid of Stephen Co. of $1,362,534 on Sewer System Contract No. 1 (North Central Sewer) was the lowest of the six submitted *434 and it was substantially lower than the cost estimate of Rumson's consulting engineers.
On December 7 Stephen Co. received a letter dated December 3 from Rumson advising it that all bids on the contract in question, together with Contract No. 5, were rejected and that a rebidding would take place on December 15, 1970 on these two contracts. No reasons for rejection were stated in the letter. The prompt efforts of Stephen Co. to obtain a copy of the resolution or abstract of the minutes of the governing body, with respect to its action on November 25 authorizing the letter, were unsuccessful.
Although Contract No. 5 is not directly involved in the instant litigation, it should be noted that the low bidder on that contract was Nero-Villa, which submitted an exceptionally low bid. The municipality had apparently received before its November meeting a communication from Nero-Villa indicating that it would not accept an award of the contract because the municipality had failed to give it proper notice of changes in the specifications.
It appears that Rumson rejected the bids on the recommendation of its engineers, who, by letter of November 23, indicated that they made inquiry of three references submitted by Stephen Co. and "[t]he consensus was that the low bidder [Stephen Co.] has good construction equipment and that he can install sewer pipe satisfactorily if careful and strict administration of the contract documents is imposed." The letter then proceeded to make reference to derogatory reports as to the contractor's "restoration" and "clean-up" work. In effect the consulting engineers concluded that Stephen Co. might not be a satisfactory contractor and that the borough should proceed forthwith to readvertise for Contract 1 and Contract 5 separately or in combination with each other.
Plaintiffs' complaint and order to show cause were filed December 11, 1970 and their application for an order restraining the municipality from proceeding with its proposed rebidding was denied. This court was then presented with *435 an application for leave to appeal from the interlocutory order and on December 14 a consent order was entered permitting the acceptance and opening of new bids on December 15 for Sewer System Contracts 1 and 5 with a direction that the same be impounded and that no contracts be awarded until further order of the Law Division. On December 23 the trial court heard arguments on plaintiffs' order to show cause, a motion by defendant for summary judgment and a cross-motion by plaintiffs for a similar judgment, and on January 4, 1971 entered judgment in defendant's favor which is the subject of this appeal, notice of which was filed on January 13.
In the meantime, the municipality received new bids on December 15; Stephen Co. did not participate in the bidding. The lowest bids then submitted on Contracts 1 and 5 separately and in combination were higher than the lowest bids that had been received on October 22. The new low bid of Cruz Construction Co. of $1,398,340 on Contract No. 1 was accepted and a contract was awarded to that company on January 14, 1971.
The following day plaintiffs filed a notice that they "shall apply before the Appellate Division of this Court * * * for a temporary Order restraining and enjoining [Rumson] from awarding any contract for Sewer System Contract No. 1" pending the instant appeal. This application was not perfected nor moved for consideration by this Court until oral argument on the appeal. At that time we were advised by counsel for the municipality that Cruz Construction Co. had proceeded with, and substantially completed, the work under Contract No. 1. We turn now to the legal issues.
N.J.S.A. 40:50-1 provides that "No municipality shall enter into any contract for the doing of any work * * * where the sum to be expended exceeds the sum of $2,500.00," unless there is public advertising and bidding therefor, and a municipality "shall award the contract to the lowest responsible bidder * * *." The original enactment of the Legislature dealing with bidding as a prerequisite to certain public *436 expenditures, L. 1912, c. 342, pp. 593-594, contained the provision, "provided, however, that said public body may, nevertheless, reject any and all bids." That act was quoted in Armitage v. Newark, 86 N.J.L. 5, 7 (Sup. Ct. 1914). In 1917 the Legislature adopted "An Act concerning municipalities" which incorporated the substance of the prior bidding statute but omitted the provisory language just quoted. See L. 1917, c. 152, art. XI, Contracts, p. 347. All amendments to date have likewise eliminated that language.
Plaintiffs, in essence, contend that the deletion of the statutory grant of power to reject all bids requires a municipality to award a contract to the lowest responsible bidder unless the bid exceeded the cost estimate for the work to be done or the project was abandoned or substantially changed in design. Defendant, on the other hand, argues that notwithstanding the absence of any express statutory authority, a municipality has the inherent contractual power to reserve the right to reject all bids and, under such a reservation, it may do so without offering any reason.
Neither of the asserted positions is tenable. Judicial acceptance of either of these extremes would be inimical to the best public interest and would be potentially destructive of a public bidding system that is intended to reduce to the irreducible minimum all elements of unfairness or impropriety.
It is generally recognized that solicitation through public advertising of competitive bidding is a stable principle of public policy, 10 McQuillin, Municipal Corporations (3d ed. 1966 revision), § 29.29, and as observed in Hillside Tp. v. Sternin, 25 N.J. 317 (1957):
* * * The purpose is to secure competition and to guard against favoritism, improvidence, extravagance and corruption. Statutes directed toward these ends are for the benefit of the taxpayers and not the bidders; they should be construed with sole reference to the public good; and they should be rigidly adhered to by the courts. [at 322; citations omitted]
*437 Any absolute rule restricting a municipality from rejecting all bids would pave the way for possible corruption and price fixing among contractors.
In Cardell, Inc. v. Woodbridge Tp., 115 N.J. Super. 442 (App. Div. July 19, 1971), the township, despite its engineer's recommendation that the low bids of Cardell be accepted, refused all bids and ordered readvertisement of the contracts. No reason was given for the rejection. The trial court found that the township had wrongfully rejected Cardell's bids on two separate projects. In our opinion of affirmance we recognized (at 450) that the unbridled power to reject bids, even when this right is reserved in the invitation for bidding, "would violate our public policy, contravene our Legislature's intention in enacting the competitive bidding statute and, in fact, afford a means by which `the statute can be evaded under color of the rejection "of any and all bids,"'" citing Armitage v. Newark, supra. We then stated:
We do not imply that a municipal governing body is without power to reject all bids under proper circumstances. No municipal governing body could effectively engage in competitive bidding without such power. At the very least, the existence of the possibility of total rejection of bids serves as a strong inducement to bidders to keep their bids as low as circumstances permit. Suffice it to say that when a municipal governing body concludes in good faith that the purposes of the public bidding statute are being violated, it may reject all bids submitted and in its discretion order a readvertising of the contract. [at 450-451]
We reasoned in that opinion:
Assuming the existence of the power to reject bids, the logical inquiry is to ask how such power must be exercised. Defendant suggests that arbitrariness and capriciousness is immaterial provided that the power is exercised in good faith. Although there is support for this theory in other jurisdictions  see the discussion and cases cited in Annotation, "Right of public authorities to reject all bids for public work or contract," 31 A.L.R.2d 469 (1953)  our courts do not subscribe to that view. On the contrary, they have more than once criticized the arbitrary rejection of bids. [at 449]
*438 Applying the rationale of Cardell, Inc. v. Woodbridge Tp., supra, to the instant matter we hold that (1) the mandate of the statute to award the contract to the lowest responsible bidder could not be evaded by arbitrary or unreasonable action on the part of Rumson, (2) it was legally proper for Rumson to reserve unto itself the right to reject all bids, and (3) in the exercise of that right Rumson could not act arbitrarily and was obliged to act in good faith and for sound public reasons.
The trial judge, in dismissing plaintiffs' complaint, invited "somebody to appeal." Although he did not have the benefit of our subsequent decision in Cardell, supra, he was mindful of the difficult problems confronting the Legislature and the judiciary in these treacherous legal waters in guiding the public interest between the Scylla of having contractors band together and submit high bids and the Charybdis of political fraud or improper favoritism. He stated, however, "I don't know whether they [the municipality] did act in good faith or whether they didn't * * * I am not satisfied that it was bad faith here."
We have examined the November 25 resolution of the governing body rejecting all bids and find no statement therein of its reasons for not accepting the low bid of Stephen Co. and, as noted above, no reasons were mentioned in the rejection letter of December 3 to that company. Indeed, it can be inferred from that communication that Stephen Co. was considered to be qualified and had been invited to participate in the new bidding that was scheduled for December 15.
The municipality apparently acted solely upon the recommendation of its consulting engineers. Stephen Co. was not afforded an opportunity to be heard on the conclusory statements in their report or to answer any indications therein that might bring into question its responsibility as the successful low bidder. That specific reasons motivated the municipality, other than the unilateral report of its consultants, to reject all bids are yet to be ascertained. A low *439 bidder is entitled to be heard by the public authority before his bid is rejected. See Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471, 284 A.2d 161 (1971) and the authorities therein cited.
Stephen Co. sharply controverted all statements and innuendoes that reflected adversely on its responsibility as the successful low bidder. We are satisfied that there were genuine issues of fact to be resolved by the trial court, that the case was not ripe for a summary judgment, and that the matter should have proceeded to a plenary hearing.
The pending motion, which for all practical purposes is now moot, is dismissed without prejudice. We do not pass upon what legal remedies, if any, might be available to plaintiffs or either of them in the event, after a full hearing, it should be determined that the municipality acted wrongfully. Compare Cardell, Inc. v. Woodbridge Tp., supra, with 10 McQuillin, Municipal Corporations (3d ed. 1966 revision), § 29.86.
Reversed and remanded for trial.