Phillip AMMERMAN et al., Plaintiffs,

v.

BESTLINE PRODUCTS, INC.,
Defendant.

Civ. A. No. 70-C-448.

United States District Court,
E. D. Wisconsin.

Jan. 22, 1973.

Frederick Hersh, and John K. Maciver and Rickard T. O'Neil, Milwaukee, Wis., for plaintiffs; Hersh, Stupar, Stepke, Gollin & Schultz, and Michael, Best & Friedrich, Milwaukee, Wis., of counsel for plaintiffs.

David E. Beckwith, Gilbert W. Church and Robert A. Christensen, Milwaukee, Wis., for defendant; Foley & Lardner, Milwaukee, Wis., of counsel for defendant.

## MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS

REYNOLDS, Chief Judge.

The defendant Bestline Products, Inc. (hereafter "Bestline"), manufactures liquid cleaning products. These products are marketed by means of a complex hierarchial distribution system. There are four strata of distributors in the system. The lowest position is that of retail distributor. Retail distributors may only sell their products to the public, and their profit potential is between 30 and 40 per cent of their sales. The next higher position is subwholesaler. Subwholesalers supply retailers and other subwholesalers. They receive up to a 51 per cent commission on retail sales. Direct distributors, the next higher position, supply subwholesalers and retail distributors as well as selling to the public. They make 52 per cent profit on sales to the public and 22 per cent on sales to other distributors. A retailer or subwholesaler can become a direct distributor by selling goods with a retail value of at least $6,000 during one month. An individual can also begin his tenure with Bestline as a direct distributor by initially purchasing products with the requisite retail value. The top position is that of general distributor. General distributors deal at a 60

per cent discount and receive 8 per cent of the sales volume of distributors contracting under them.

Distributors purchase Bestline products at 30 per cent below retail prices. Their profits in addition to the 30 per cent are dependent on sales volume during a given month. If, for example, a retail distributor sells more than $250 worth of Bestline products in a month, he receives an additional 10 per cent rebate, making his total profit 40 per cent. As already mentioned, the profit potential varies between the several categories of distributorships.

In addition to selling Bestline products, distributors are expected to actively recruit or "sponsor" other distributors. An individual's profits and opportunity to progress to a higher distributorship are increased as he fosters the geometric expansion of distributors under him. Also, a distributor gets a percentage of the sales of any direct distributor he has sponsored.

There are several restrictions placed on distributors. They cannot sell Bestline products in stores or across the counter. Products cannot be sold below the minimum wholesale price, and distributors must require those whom they supply to agree to sell the products at the suggested retail price where that is allowed by state law. Finally, competing products cannot be sold through the Bestline marketing plan or distributor program.

This action was brought by several direct and general distributors. They allege several causes of action. The first count in the amended complaint alleges that defendant's price controls, restrictions on sales, and prohibition of the sale of competitive products restrained plaintiffs' trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. Jurisdiction is based on § 4 of the Clayton Act, 15 U.S.C. § 15. Count II alleges that the price structure of the defendant's marketing plan had the effect of discriminating against plaintiffs, rendering it difficult or impossible for them to compete with other distributors.

Plaintiffs allege that this price discrimination is in violation of § 2 of the Robinson-Patman Act, 15 U.S.C. § 13. The third count alleges a violation of the Wisconsin Statutes, § 133.01 (1969), and claims pendant jurisdiction. Count IV asks for damages and/or rescission because of defendant's alleged misrepresentations. Jurisdiction is based on pendant jurisdiction. The fifth count realleges misrepresentation and claims jurisdiction on the basis of diversity of citizenship. Plaintiff, of course, alleges damages in excess of $10,000.

The matter is before the court now on defendant's motion to dismiss the complaint because the first three causes of action fail to state claim upon which relief can be granted, there is no pendant jurisdiction over the fourth, and, as a matter of law, the damages in the fifth cause of action cannot exceed $10,000. The motion is denied.

Since the court considered matters outside the pleadings, the motion to dismiss the first three causes of action, brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, must be treated as a motion for summary judgment under Rule 56. 2A Moore's Federal Practice, ¶ 12.09(3). The court must, therefore, determine if there is any genuine issue of fact and, if not, if the movant is entitled to judgment as a matter of law.

The first issue is the alleged violation of the Sherman Act. The Supreme Court held in United States v. Arnold, Schwinn & Co., 388 U.S. 365, 379, 87 S.Ct. 1856, 1865, 18 L.Ed.2d 1249 (1967), that "where a manufacturer *sells* products to his distributor subject to territorial restrictions upon resale, a *per se* violation of the Sherman Act results. And, as we have held, the same principle applies to restrictions of outlets with which the distributors may deal and to restraints upon retailers to whom the goods are sold. Under the Sherman Act, it is unreasonable without more for a manufacturer to seek to restrict and confine areas or persons with whom an article may be traded

after the manufacturer has parted with dominion over it." I do not accept the defendant's contention that the *Schwinn* dictum, to the effect that "newcomer" or "failing" companies may be excepted from the ruling, automatically exempts the defendant corporation. Nor do I feel that Tripoli Company v. Wella Corporation, 425 F.2d 932 (3d Cir. 1970), with its emphasis on public welfare and safety, created a precedential niche in the *Schwinn* holding into which the defendant falls. I feel that both the *Schwinn* dictum and the *Tripoli* holding call for a close examination of the factual context of this case to determine if the restrictions on distributors are reasonable in these particular circumstances. As the court stated in *Tripoli*, "*Schwinn* must be read, as must *all* antitrust cases, in its factual context." 425 F.2d at 936 (emphasis added). Given the import of *Schwinn*, the defendant's restrictions on their distributors and the lack of factual information about the market in which the defendant is dealing, I cannot hold, as a matter of law, that the defendant has not violated the antitrust laws. Defendant's motion to dismiss the first cause of action must, therefore, be denied.

■ Defendant also claims that there is no merit to the cause of action alleged under the Robinson-Patman Act. Since I feel that a factual issue has not been resolved, I do not reach the merits of defendant's legal contention. Presuming, however, that functional availability of a preferred price is a defense to a charge of price discrimination in violation of the Robinson-Patman Act, I do not have sufficient evidence to determine if there is, in fact, functional availability in this case. I, therefore, cannot dismiss the second cause of action.

■ Since I feel that a valid claim has been alleged under federal antitrust law, it is reasonable to assume pendant jurisdiction over a claim brought pursuant to a similar state law. The motion to dismiss the third cause of action is therefore denied.

■ The two remaining aspects of the defendant's motion challenge this court's jurisdiction over counts IV and V. Defendant contends that there is no diversity jurisdiction as alleged in the fifth cause of action because the damages do not amount to $10,000. After reviewing the cases cited in the opposing briefs, I cannot hold to a legal certainty that the punitive damages necessary to satisfy the jurisdictional amount could not be awarded in this case. The facts are not clear enough to make that determination.

■ Finally, the defendant claims that the court cannot assume pendant jurisdiction over the misrepresentation allegation. First, defendant asserts that the issues in the misrepresentation and antitrust charges are too dissimilar to be tried together. Second, the facts, if both issues were tried together, would be too complex and would confuse the trier of fact. Finally, the defendant contends that there is an internal inconsistency in the amended complaint and that the misrepresentation and antitrust violation as alleged cannot exist simultaneously. I do not accept any of these contentions. As I understand the issue, the plaintiffs are not alleging that they were induced to purchase a faulty product as a result of the defendant's representations but rather that they were induced to invest in a marketing system; that is, the representations about the distributorships are at issue. Therefore, the allegations are not inconsistent, nor are the issues unrelated. Plaintiffs allege, *inter alia*, that defendant misrepresented the profit potential of their distributorships and that the antitrust violations were part of the reason the profits were limited. I feel that the issues are similar enough and the facts not so inherently confusing for a court to assume pendant jurisdiction over Count IV of the complaint.

For the foregoing reasons,

It is ordered that the defendant's motions to dismiss be and they hereby are denied.