NORMAN M. CLAPP, Secretary Department of Transportation
You have requested my opinion on the following question:
 ". . . whether the Department of Transportation has authority under its standard specifications and the law to disqualify firms and individuals as bidders and subcontractors prior to conviction on bid rigging and similar charges under Section 133.01 (1) and (3), Stats., or the Sherman Act, 15 U.S.C. § 1 ."
You note in your letter that sec. 102.12 of the Standard Specifications of the Division of Highways, provides, in part: *Page 61 
 "Developments subsequent to establishment of bidder's competency and qualifications which, in the opinion of the Division of Highways would reasonably be construed as affecting the responsibility of the bidder."
Apparently, the firms in question have for a considerable period of time been recognized by your department as being competent and responsible. Accordingly, action at this time can perhaps be best described as a reevaluation of their prior prequalification. In other words, if your department were to take action at this time, such action would be tantamount to a revocation of their qualification on the ground of lack of integrity.
The answer to your question is yes, but only after a hearing and provided there is an appropriate finding supporting such action.
Under sec. 84.06, Stats., the Commission is required to award contracts to the "lowest competent and responsible bidder as determined by the highway commission."
Such words as "competent" and "responsible" are generally construed to include consideration of honesty and integrity. In 10 McQuillin Mun. Corp., sec. 29.73, it is stated in part:
 ". . . "`The lowest responsible bidder" . . . must be held to imply skill, judgment and integrity necessary to the faithful performance of the contract, as well as sufficient financial resources and ability.' So, too, if the material required is such that the bidder has no right to its use on account of it being patented, his bid may be rejected under a requirement to let the contract to the `lowest responsible' bidder.
 "Concerning the inquiry, how the responsibility is to be determined, `the authorities speak with practically one voice,' namely, that the officers in whom the power is vested `must determine the fact, and such determination cannot be set aside unless the action of the tribunal is arbitrary, oppressive or fraudulent. The determination of the question of who is the lowest responsible bidder does not rest in the exercise of an arbitrary and unlimited discretion, but upon a bona fide judgment, based upon facts tending to support the determination.' This view has in general been supported by the authorities. The determination of the municipal officials *Page 62 
concerning the lowest responsible bidder will not be disturbed by the courts, unless it is an arbitrary, unreasonable misuse of discretion. When the officers have exercised their discretion in the award of the contract, the presumption obtains that such action was regular and lawful, and such presumption can be overcome only by proof that the officers acted without justification or fraudulently."
Although it is implicit within the context of your letter that you do not intend to base any such consideration on the mere fact of indictment alone, it nevertheless seems appropriate to briefly discuss the fact of indictment in relation to the question of "responsible" bidder.
An indictment is nothing more than an accusation of wrongdoing.State v. Lawler (1936), 221 Wis. 423, 267 N.W. 65. An indictment returned by a grand jury does not change the presumption of innocence. State v. Lawler, supra, at p. 430. It would clearly be inappropriate for a state agency to disqualify a bidder on the ground of being under indictment. The state agency must make a finding that is supported by independent evidence that the bidder lacks responsibility and integrity.
The determination of responsibility or lack of responsibility by the Commission, under the particular circumstance of the present situation, must be by hearing.
The Fourteenth Amendment of the United States Constitution provides in part:
 ". . . nor shall any State deprive any person of life, liberty or property, without due process of law; . . ."
Falling within the protection of the "due process clause" are such matters as: the right to engage in any of the common occupations of life, Larkin v. Bruce (E.D. Wis. 1972),352 F. Supp. 1077; the right to receive statutory welfare benefits,Goldbert v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287
(1970); discharge from public employment, Slochower v. Board ofEducation, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1955); and the right to one's standing in the community or his reputation,Board of Regents of State Colleges v. Roth, 408 U.S. 564,92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). *Page 63 
By analogy, many of the above protected rights are involved in the present situation. For example, disqualification would certainly affect reputation and place severe restrictions on the right to engage in an occupation.
Accordingly, I am of the opinion that consideration of disqualification at this time on the ground of lack of responsibility would, under the due process clause of the United States Constitution, require a hearing. This opinion is consistent with somewhat recent decisions which considered the awarding of contracts to one other than the lowest bidder.
In Housing Authority of Opelousas, La. v. Pittman Const. Co. (5th Cir., 1959), 264 F.2d 695, the court stated at pp. 703 and 704:
 "This case can be sliced down to the Board's deciding that the low bidder was not a responsible bidder — without giving the low bidder a fair chance to disprove the charges or irresponsibility. By any reasonable standards, such action offends one's sense of fair play and is an arbitrary abuse of discretion inconsistent with the letter and the spirit of the Louisiana Public Works Law."
 "In arriving at our conclusions we are not unmindful of the limitations inherent in administrative action of a public body. The members of the Board of the Opelousas Housing Authority are laymen. We do not expect such a Board to conduct FBI investigations, hold elaborate hearings, adhere to legal rules of evidence, and function as a judicial body. Members of public boards, however, have as well developed bumps of fairness and reasonableness as judges. In the light of what fair-minded, reasonable laymen would do, we think that before a Board disqualifies the lowest bidder as not responsible, the lowest bidder has the right to be heard and the Board has the duty to listen on the subject of responsibility. In this case the Board's failure to recognize the bidder's right to be heard prior to Board action on the charges presented at the June 6 meeting and the Board's failure to listen when it was given an opportunity to listen were an abuse of discretion." *Page 64 
In City of Inglewood-L.A. Cty. Civ. Ctr. A. v. Superior Ct. (1972), 500 P.2d 601, 103 Cal. Rptr. 689, the court, at p. 607, stated:
 "We hold that prior to awarding a public works contract to other than the lowest bidder, a public body must notify the low monetary bidder of any evidence reflecting upon his responsibility received from others or adduced as a result of independent investigation, afford him an opportunity to rebut such adverse evidence, and permit him to present evidence that he is qualified to perform the contract. We do not believe, however, that due process compels a quasi-judicial proceeding prior to rejection of the low monetary bidder as a nonresponsible bidder."
Also, see Sellitto v. Cedar Grove Tp. (1944), 132 N.J.L. 29,38 A.2d 185; M. A. Stephen Const. Co. v. Borough of Rumson (1971),117 N.J. Super. 431, 285 A.2d 55.
I find little relevant distinction between disqualification of a prospective bidder on the ground of lack of honesty and rejection of the lowest bid or successful bidder on the same ground. Accordingly, I have not attempted to discuss any such elusive distinctions. The net result in either case is the same, damage to reputation and severe restriction on the right to engage in an occupation.
The Department of Transportation, under sec. 84.06, Stats., and its own bidding specifications may and perhaps should make a reevaluation of the responsibility of the firms in question. Such reevaluation would, however, require a hearing or an opportunity for a hearing.
RWW:CAB